**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **R.S. and R.S., Individually and on** | : | **CIVIL ACTION** |
| **Behalf of J.S., a minor** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LOWER MERION SCHOOL DISTRICT,** | : | |
| **301 e. Montgomery Avenue,** | : | |
| **Ardmore, PA  19003** | : | **NO. 22-3478** |

## MEMORANDUM OPINION

**SAVAGE, J.**                                                                                    **February 24, 2023**

The goal of the Individuals with Disabilities Education Act (IDEA) is to provide each disabled student with an individualized educational program tailored to his changing needs and designed to achieve educational progress.  As the Third Circuit Court of Appeals has recognized, "[c]hildren are not static beings; neither their academic progress nor their disabilities wait for the resolution of legal conflicts."  *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).

J.S. is caught in an administrative and legal process that does not timely respond to his changing needs.  Citing his treating clinicians' recommendation that he return to his regular high school because his bipolar condition that led to his suspension and a proposed out-of-district placement is now successfully managed and his mood is stable, J.S. moved to supplement the administrative record and for a temporary injunction requiring the Lower Merion School District ("District") to reinstate him.

Before explaining why we granted the motion for an injunction,[1] we address the motion to supplement the record.  We do so mindful of the Third Circuit's recognition that the legal and administrative processes do not readily adjust to a student's changing needs.

### Factual Background

J.S. suffered a manic episode with severe psychotic features over the weekend of November 19 through 22, 2021.  He was hospitalized on November 22, 2021.  Two days later, he was admitted to the Horsham Clinic where he received a preliminary working diagnosis of "Unspecified Bipolar disorder.  Rule out, Bipolar disorder, manic with psychotic features."[2]  J.S. was discharged from the Horsham Clinic on December 2, 2021.  Upon discharge, he was prescribed 5 mg of Abilify at bedtime.

On December 16, 2021, J.S. had a second manic episode.  Four days later, he was taken to Bryn Mawr Hospital Emergency Room where he was placed in restraints for one day.  On December 22, 2021, J.S. was transferred to Montgomery County Youth Center ("MCYC") where he remained until January 19, 2022.  On January 4, 2022, while at MCYC, he had a third manic episode.  He has had none since.

After his first manic episode, J.S. began treating with Dr. Robert L. Klein, a clinical psychologist, and Dr. Katie Hoeveler, a psychiatrist focusing on child and adolescent psychiatry.  From December 7 to 19, 2021, J.S. engaged in six telehealth sessions with

---

[1] After a hearing on the motion for a preliminary injunction on January 24, 2023, we granted the motion and ordered the District to reenroll J.S.  *See* Order (Jan. 24, 2023), ECF No. 23.

[2] Email from Jagruti Amin to R.S. (Nov. 26, 2021, 1:34 PM), ECF No. 11-13 at 333; *see also* The Horsham Clinic Discharge Summary (Dec. 2, 2021) at 1, ECF No. 11-13 at 323–26 ("RULE OUT BIPOLAR AFFECTIVE DISORDER").

Dr. Klein.  Dr. Klein shared his findings in his Psychological Report, dated December 19,

2021:

> Diagnoses: Manic-Depression, ADHD, R/O Disruptive Mood
> Dysregulation Disorder
>
> [J.S.], 16, was taken into custody and brought to Bryn Mawr
> Hospital for a psychiatric evaluation.  He was then brought to
> Horsham Clinic for further treatment and discharged with
> further treatment recommendations.
>
> We have engaged in six telehealth sessions starting
> 12/7/2021 to 12/19/2021.  My conclusions to date are that
> [J.S.] is suffering from an undiagnosed manic-depressive
> disorder which has intensified during his teen years.  He
> exhibits an excess of both manic and depressive cycling
> symptoms which account for his most recent behaviors and
> moods.  Examples of these symptoms are: decreased need
> for sleep, racing speech and thoughts, excessive irritability,
> verbally aggressive behavior (in reaction to verbal threats,)
> impatience, poor judgment, an inflated sense of self-
> importance, anger, worry and anxiety, inability to sleep, and
> grandiose thinking.
>
> Reading through his internet communications, one notes an
> initial attempt to intimidate the provocateurs, followed by
> apologetic statements for his statements.  Similarly, his
> encounters with the police were initially threatening then
> immediately submissive; not indicative of a violent person but
> suggesting a frightened rather than an aggressive person,
> with a need for self-aggrandizement from the appreciation of
> others.
>
> Manic-Depressive behavior is typically genetically inherited,
> triggered both by the genes and the environment.  Presently,
> it is treated (but not cured) by a combination of medicine, talk
> therapy, family therapy, and "environmental therapy."  At
> present, the mood stabilizer he is taking (Abilify) is insufficient
> and the medication should be re-examined.  (Also, to rule out
> DMDD, as should the previously diagnosed ADHD.)

In conclusion, given the proper treatment, [J.S.] should be able to function in his present school.[3]

Dr. Hoeveler treated J.S. six times from January 2021 to May 2022.  In a January 16, 2022 letter, Dr. Hoeveler wrote:

[J.S.] is under my care.  He has been diagnosed with Bipolar Affective Disorder Type 1.  He is being treated with Abilify 10 mg daily.

As his bipolar disorder is effectively treated at this time, his moods should remain stable, and his moods should not interfere with typical schooling.  He should return to typical school.[4]

She wrote four days later:

[J.S.] is under my care.  He is diagnosed with Bipolar Affective Disorder 1.

[J.S.'s] potentially threatening comments and behaviors were made while he was in a manic state, a state characterized by grandiosity and delusions, when untreated.   [J.S.] is now adequately treated for his Bipolar Affective Disorder 1, is currently euthymic, and poses no threat.[5]

The manic episode and disciplinary referrals instigated an evaluation by the District.  The Evaluation Report (March 2022 ER) was prepared by Dr. Tim Edge, the District's psychologist.  Dr. Edge considered information from the parents, Dr. Hoeveler, Dr. Klein, the school records, school personnel, interviews of J.S., and test results.  After reviewing this information, Dr. Edge concluded J.S. was a child with an emotional

---

[3] Psychological Report from Dr. Robert Klein (Dec. 19, 2021), ECF No. 11-13 at 339–40 ["Dr. Klein Dec. 2021 Psych. Report"].

[4] Letter from Dr. Katie Hoeveler (Jan. 16, 2022), ECF No. 11-13 at 350 ["Dr. Hoeveler Jan. 16 Letter"].

[5] Letter from Dr. Katie Hoeveler (Jan. 20, 2022), ECF No. 11-13 at 351 ["Dr. Hoeveler Jan. 20 Letter"].

disturbance in need of special education and qualified to receive it.  Dr. Edge explained

why a typical school could not provide what J.S. needed:

> [J.S.] requires a program which is academically challenging, but at the same time therapeutic, structured, and supportive. When increased insight into his behavior is evidence [sic], as well as ownership of his contribution to problems he has encountered, and an ability to see things from another's perspective, a return back to a less restrictive setting would be in in [sic] order.  To program for [J.S.] in a public school setting at this time, which lacks an intensive therapeutic support component which he clearly requires at this time in his life, would place him at risk of failure and potentially increased behavioral difficulties.  His medication and therapy supports are an excellent start, but there is a history of behavioral difficulties, lack of reaching potential, and considerable restorative work needed.  [J.S.] responded well to his experience at the Youth Detention Center based on self, parent, and therapist report; this is obviously a highly regimented and structured program.  Structure is something that [J.S.] needs right now.[6]

Based on the March 2022 ER, an Individualized Education Program ("IEP") was

developed.  The IEP recommended a therapeutic out-of-district placement, reasoning that

"[a]t this time, [J.S.] is not able to participate in the general education classroom within

his home School District.  [J.S.] requires intensive therapeutic, emotional, behavioral, and

social supports in order to appropriately meet his needs."[7]  The District sent referral

packets to potential placements.  Only Lifeworks, an accredited academic school in a

therapeutic setting designed to provide emotional support, accepted.  Parents rejected

the proposed placement and unilaterally enrolled J.S. in a private school, Fusion

Academy, on February 28, 2022.

---

[6] Evaluation Report for J.S. at 47 (Mar. 11, 2022), ECF No. 11-12 at 184–236.

[7] Individualized Education Program for J.S. at 43 (Mar. 17, 2022), ECF No. 11-12 at 237–81.

On March 24, 2022, Parents filed a due process complaint. A hearing officer conducted a four-day hearing over the course of three months, beginning in May 2022. Among the witnesses testifying were J.S.'s treating psychiatrist, the District's psychologist, and a psychiatrist retained by the District. The parties submitted over 1,500 pages of exhibits. The hearing officer issued his Final Decision and Order on August 26, 2022.

The hearing officer wrote:

> The 2022 ER very clearly paints a picture of a child with Emotional Support needs that cannot be met in a typical high school. The level of therapeutic services that the Student requires to receive a FAPE do not exist in typical high schools, and the District is not obligated to create a school within a school for the Student.
>
> . . . .
>
> A full-time, therapeutic, Emotional Support placement is appropriate for the Student.[8]

Upholding the IEP, he explained:

> Through the 2022 IEP and the Private School, the District offered a FAPE to the Student. I find no procedural or substantive flaw in the 2022 ER, and the 2022 IEP flows directly from, and is directly responsive to, that evaluation. It is individually tailored to the Student's needs and was reasonably calculated to provide a FAPE when it was offered.
>
> . . . .
>
> . . . the District completed the 2022 ER and offered the 2022 IEP. While there are some flaws in the 2022 IEP, none of them are fatal. Moreover, the 2022 IEP flows directly from the 2022 ER and targets the Student's needs through appropriate goals with SDI and modifications tailored to enable the Student to satisfy those goals. The Private School in which the District offered to implement the IEP is also appropriate

---

[8] Final Decision & Order at 36 (Aug. 26, 2022), ECF No. 11-3.

and does not constitute a violation of the Student's right to be
educated in the least restrictive environment under the facts
of this case.  2022 IEP was reasonably calculated to provide
a FAPE at the time i[t] was issued.[9]

J.S. remained at Fusion Academy until November 2022 when parents enrolled him

in Lifeworks, the District's out-of-district placement.   On November 2, 2022, Parents

requested that the District reevaluate J.S. or, in the alternative, fund an Independent

Educational Evaluation ("IEE") to include current and updated information regarding J.S.'s

treatment and academic progress.   The District refused to do either.   Instead, it filed a

due process complaint, defending its rejection of the request for a reevaluation.   The

complaint was dismissed on January 16, 2023.   The parties are now engaged in

developing a new plan for J.S.[10]

### Motion to Supplement the Administrative Record

Parents seek to supplement the record with J.S.'s Fusion Academy academic

transcript and the updated reports of J.S.'s treating mental health clinicians, Dr. Robert

Klein and Dr. David Danish of Philadelphia Integrative Psychiatry.

The IDEA mandates that the district court "shall hear additional evidence at the

request of a party."   20 U.S.C. § 1415(i)(2)(C)(ii).   Given this mandate, a court may not

summarily reject supplemental evidence.   *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 253

(3d Cir. 2012) (citing *Susan N.*, 70 F.3d at 759–60).   On the other hand, it need not admit

all proffered additional evidence.   In exercising its discretion, a court may admit evidence

that is relevant, helpful and non-cumulative in the particular case.   *Susan N.*, 70 F.3d at

---

[9] *Id.* at 35, 38.

[10] At the January 24, 2023 hearing, the parties represented that the District planned to reevaluate
J.S.  During a February 9 conference call, we learned that the reevaluation had begun.

760.  The court must keep in mind the need to accomplish the goal of providing "access to a program that is tailored to his or her *changing needs*."  *Id.* (emphasis added).

The Third Circuit addressed when a district court may consider evidence beyond the administrative record in *Susan N. v. Wilson School District*.  It explained:

> It is regularly held that the question of what additional evidence to admit in an IDEA judicial review proceeding, as well as the question of the weight due the administrative findings of fact, should be left to the discretion of the trial court. . . . Congress' central goal in enacting the IDEA was to ensure "that each child with disabilities has access to a program that is tailored to his or her changing needs and designed to achieve educational progress."  Children are not static beings; neither their academic progress nor their disabilities wait for the resolution of legal conflicts.  While a district court appropriately may exclude additional evidence, a court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved.  Consequently, on [] remand the district court should use this standard in determining whether to admit the proffered additional evidence, *i.e.*, would the evidence assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved.

*Id.* (citations omitted).

Applying this standard, we conclude that the additional evidence proffered by the Parents—the Fusion Academy transcript and the reports of Dr. Danish and Dr. Klein—is relevant, useful and not cumulative.  It bears on the stability of J.S.'s moods, his compliance with medication and treatment protocols, and his academic progress.  It shows that he no longer needs extensive therapeutic support and can return to typical school.  The additional evidence reveals how his needs have changed since the hearing officer's decision.

In the spring 2022 semester at Fusion, J.S. was enrolled in English, Physics, Pre-Calculus, Spanish, and U.S. History.  According to his transcript, he earned all As, with the exception of English and Spanish in which he earned an A-.  His cumulative GPA is 4.0.  In the Fall of 2022, J.S. was enrolled in Calculus, English, Government, Personal Fitness, and Piano.  In November 2022, Parents, without waiving any claims or legal rights, agreed to enroll J.S. in Lifeworks, the District's proposed out-of-district placement.  While enrolled at Lifeworks, J.S. continued to take classes at Fusion in addition to those at Lifeworks.

Parents sought out Dr. Danish after the District refused to reevaluate J.S.  Dr. Danish saw J.S. on November 28, 2022.  His opinion is consistent with the opinion of J.S.'s former treating psychiatrist, Dr. Katie Hoeveler.  Dr. Danish wrote:

> I just began treating [J.S.] for Bipolar I disorder and had an initial appointment with him on November 28, 2022.  I have confirmed the diagnosis of Bipolar I disorder by history.  He is currently taking Abilify 15 mg at bedtime and this level of medication is currently appropriate for him.  His mood is stable and there is no evidence of mania or hypomania at his in-person visit.  Bipolar I disorder is unusual for patients of [J.S.'s] age.  That said, I have treated hundreds of adolescent students (in high school and early college) with a diagnosis of Bipolar I disorder.  With stable moods all have been in typical schooling.  Medical management is a critical factor for Bipolar I disorder which is principally a chemical imbalance.  Therapy is also helpful and once a week generally suffices.  (I understand that [J.S.'s] treating psychologist has continued to see him twice a week to help [J.S.] manage his disappointment with not being back in his neighborhood high school with his peers.)
>
> Given [J.S.'s] current euthymic state and his lack of any violent ideation towards self or others, I do hope you reevaluate your position that he will not be allowed to attend Lower Merion High School.  It is my understanding that the

9

reason for him not being allowed to attend LMHS [is] related
to symptoms he exhibited during a previous manic episode.[11]

Dr. Klein has been treating J.S. twice weekly since his manic episode in November

of 2021.  As of November 28, 2022, he had treated him 102 times.  Based upon his

treatment of J.S., Dr. Klein authored a Psychological Report, dated November 30, 2022,

stating:

> [J.S.] has been in continuous treatment with me since
> 12/7/2021.  He has participated in 102 therapy sessions, with
> the most recent on 11/28/2022.  Once medication was
> properly adjusted in early January 2022, [J.S.'s] moods have
> remained stable throughout this period.  Therefore, it is my
> professional opinion that he is ready to return to Lower Merion
> High School.  Furthermore, there is no need for full-time
> emotional support.
>
> I have discussed the merits of attending Lifeworks with [J.S.],
> primarily to increase social interaction and as a path back to
> Lower Merion High School.  [J.S.] agrees.
>
> During this treatment period, I have not seen any evidence of
> hypomania.  If this remains a concern, I suggest that a
> reevaluation by the school psychologist would be
> appropriate.[12]

The Fusion Academy transcript shows J.S.'s ability to succeed in an academically

challenging program.  It demonstrates that he could successfully return to Lower Merion

High School and keep up with coursework at a typical school.

Dr. Danish, who has expertise and experience in treating adolescents with Bipolar

I Disorder, offers opinions based on the current state of J.S.'s disorder and its bearing on

his appropriate placement.  He explains that medication management is critical for

---

[11] Letter from Dr. David Danish (Nov. 28, 2022), ECF No. 19-8.

[12] Psychological Report from Dr. Robert Klein (Nov. 30, 2022), ECF No. 19-4 ["Dr. Klein Nov. 2022 Psych. Report"].

regulating the chemical imbalance causing Bipolar I Disorder and that with proper treatment the students he has treated have succeeded in typical school.  He found that J.S.'s mood is stable and there is no evidence of mania or hypomania.  He concludes that J.S. should be in typical school.  These facts and opinions are relevant to J.S.'s present needs.

Although Dr. Klein reached the same conclusion in May 2022, his November 2022 opinion is new because it shows how J.S. has responded to treatment and his current medications.  As of November 2022, he had been treating J.S. twice weekly for almost a year in 102 therapy sessions.  Dr. Klein reports that now J.S.'s moods are stable, he is compliant with his medication protocol, his medication protocol is effective, and he is ready to return to Lower Merion High School.

Although Dr. Klein's new report may appear cumulative, it is not.  His opinion that J.S. should be in a typical school has not changed.  What is new is the history and efficacy of J.S.'s treatment that demonstrates that he can successfully attend Lower Merion High School as Dr. Klein had originally opined.  It removes any uncertainty about how J.S. would respond to treatment.

The proffered additional evidence is relevant, useful and noncumulative.  It tends to prove that J.S.'s moods are stable, he is compliant with his medication, and he would be academically successful at Lower Merion High School.  Therefore, we shall grant the motion to supplement the record to the extent it bears on J.S.'s present placement.

When the hearing officer issued his decision, it was based upon the facts and circumstances existing at that time.  We evaluate and determine the appropriateness of the IEP, as he did, at that time.  *Carlisle Area Sch. v. Scott P. ex rel. Bess P.*, 62 F.3d

520, 534 (3d Cir. 1995) (quoting *Fuhrmann v. Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993)); *see also D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564–65 (3d Cir. 2010) (citing *Susan N.*, 70 F.3d at 762).  That circumstances have changed since does not affect our analysis of the IEP's appropriateness and the hearing officer's decision. Nonetheless, to effectuate the goals of the IDEA, we can evaluate the placement at the present time in light of the change in circumstances.  Thus, the additional evidence was admitted solely for purpose of considering the motion for an injunction and not in the appeal of the hearing officer's decision.

## Motion for Preliminary Injunction

Parents moved for a preliminary injunction directing the District to educate J.S. at Lower Merion High School with the special education supports the District's psychiatrist recommends.  They challenge the hearing officer's determination that the March 2022 IEP appropriately placed J.S. at a private therapeutic high school providing the high level of emotional support he needs for academic and social success.  They argue the placement is not a free appropriate public education (FAPE) in the least restrictive environment (LRE).

After reviewing the parties' submissions and after a hearing, we granted the motion for a preliminary injunction.  We did so because J.S. had shown a likelihood of success on the merits and he would suffer irreparable harm if he did not return to his regular school.  There will be no harm to the District and there is no prevailing public interest preventing J.S.'s return to Lower Merion High School.

### *Discussion*

In determining whether preliminary injunctive relief is available, we consider four factors: (1) the likelihood that J.S. will succeed on the merits; (2) the threat of irreparable

harm to J.S. if an injunction is not granted; (3) whether granting an injunction will result in greater harm to the District than J.S.; and (4) whether injunctive relief will be in the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citations omitted); *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff,* 669 F.3d 374, 385–86 (3d Cir. 2012) (citation omitted).

Only if the moving party demonstrates that he will likely succeed on the merits and will suffer harm if preliminary relief is not granted, do we consider and balance the remaining factors to determine if equitable relief is warranted. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997); *Reilly*, 858 F.3d at 179.

Likelihood of Success on the Merits

In considering the motion for a preliminary injunction, we evaluate the appropriateness of the IEP and the hearing officer's decision as of the time they were made. For purposes of the motion, we accept that when the IEP was developed, J.S. required a full-time therapeutic and emotional support placement. The question now is whether the placement remains appropriate in light of the change in circumstances. More specifically, have J.S.'s needs changed so that that placement is no longer appropriate?

When the IEP was developed in March 2022, J.S. had only recently been diagnosed with Bipolar I Disorder and there was no definitive evidence that he was being effectively treated. His doctors were still adjusting his medications in an effort to stabilize his moods.

After he suffered a manic episode with severe psychotic features in November 2021, J.S. was initially prescribed 5 milligrams of Abilify in early December. One month later, Dr. Klein opined that J.S.'s current dosage of Abilify was insufficient and should be

13

reexamined.   Dr. Klein added that "given the proper treatment, [J.S.] should be able to function in his present school."[13]

At some point in late December 2021 or early January 2022, J.S.'s dosage was increased to 10 milligrams daily.  Dr. Hoeveler increased his dosage to 15 milligrams in late January 2022.  Even though Dr. Hoeveler evaluated J.S. as stable, she increased his Abilify to 20 milligrams in April 2022.

From January to April 2022, J.S.'s medication was being adjusted to find the dosage necessary to stabilize his mood.  It was a work in progress.  It was uncertain how J.S. would respond to treatment.  His doctors qualified their opinions that he could return to typical school, writing that he "*should* be able to function in his present school,"[14] "his moods *should* remain stable,"[15] "his moods *should* not interfere with typical schooling."[16] These opinions were more aspirational than conclusive.

Dr. Newbrough, the District's consulting psychiatrist, opined then that J.S.'s response to medication will require monitoring over time.  Now, we have had a year to monitor the medication's effectiveness.  It has proven effective.

Dr. Klein has been treating J.S. twice weekly since his manic episode in November of 2021.  Based upon his long-term treatment of J.S., Dr. Klein reported that: "Once medication was properly adjusted in early January 2022, [J.S.'s] moods have remained

---

[13] Dr. Klein Dec. 2021 Psych. Report.

[14] *Id.* (emphasis added).

[15] Dr. Hoeveler Jan. 16 Letter (emphasis added).

[16] *Id.* (emphasis added).

stable throughout this period.  Therefore, it is my professional opinion that he is ready to return to Lower Merion High School."[17]

Currently, J.S. is receiving therapeutic services from a private psychologist and a psychiatrist.  He sees Dr. Klein twice a week, treats with a psychiatrist, and is totally compliant with his medication.  J.S. no longer needs the therapeutic support and services that Lower Merion High School could not provide.

After the District refused to reevaluate J.S at their request, Parents sought Dr. Danish.  Dr. Danish initially saw J.S. on November 28, 2022.  As we noted earlier, he opined that J.S.'s disorder was under control and medically managed, removing any impediment to his returning to Lower Merion High School.

In sum, after monitoring J.S.'s moods and treating him over a year, we have insight no one had a year ago.  His Bipolar I Disorder is now diagnosed and treated.  There is no contraindication to his attending Lower Merion High School.  Therefore, as the parties devise and implement a new plan, we conclude that there is a substantial likelihood that J.S. will succeed in showing that Lower Merion High School is the appropriate placement.

The Threat of Irreparable Harm to J.S.

J.S. must show that he will suffer irreparable harm if relief is not granted.  *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (quoting *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989)).  There must be more than a mere risk of irreparable harm. There must be a clear showing that irreparable harm is likely.  *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017) (citations omitted); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204 (3d Cir. 2014).

---

[17] Dr. Klein Nov. 2022 Psych. Report.

Failure to provide a FAPE constitutes irreparable injury.  *Massey v. District of Columbia*, 400 F. Supp. 2d 66, 75 (D.D.C. 2005) (citations omitted).  The Third Circuit has recognized "that a sound educational program has power to 'change the trajectory of a child's life,' while even a 'few months' in an unsound program can make a 'world of difference in harm' to a child's educational development."  *Issa*, 847 F.3d at 142  (first citing *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625 (3d Cir. 2015); and then citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 121–22 (1st Cir. 2003)).

Dr. Hoeveler opined that exclusion from Lower Merion High School "will cause detrimental long-term consequences."[18]  We agree.  J.S. has been excluded from Lower Merion High School for over a year.  If he does not return now, he will lose his senior year and will not graduate with his peers.  At Lifeworks, there are no extracurricular activities, no homework, no collaborative studies, and no advanced placement courses.  He could not recapture these lost experiences.

## Balance of the Equities

In considering the equities under the third factor, we must balance the potential injury to J.S. against the potential injury to the District.  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) (citation omitted).  We find that the District will not suffer any injury.

The District argues that there is no program for J.S. to enter.  Its argument rests on its premise that he still requires a level of therapeutic service that does not exist in a typical high school.  Although J.S. may have required therapeutic services at the time the

---

[18] Letter from Dr. Katie Hoeveler (May 1, 2022), ECF No. 11-13 at 442.

hearing officer issued his decision, he does not now.  He has been receiving the services he needs through his private psychiatrist and psychologist on a regular basis.

The District also cites concerns with J.S.'s behavior, noting that prior to November 2021, J.S. had displayed impulsivity and disruptive classroom behaviors and was disrespectful to teachers.  It also points to J.S.'s manic episodes in November 2021 through January 2022.  These concerns were real a year ago.  But, they no longer are. When he last attended Lower Merion High School, J.S.'s condition had been undiagnosed and untreated.  His behavior then and for years earlier was a product of that condition. Now, his condition is managed and his moods are stable.

The District also contends that academic concerns are a reason to bar J.S.'s return to typical school.  According to the District, J.S. was struggling academically throughout his sophomore and junior year.  It notes that by the end of his tenth-grade year, he had a D+ in Honors English and failed Pre-Calculus.  His eleventh-grade Math and Spanish teachers reported ongoing disciplinary problems and academic concerns.  He was failing Spanish and refusing to complete math assignments.  The District argues that these academic concerns continued when J.S. was being educated at Montgomery County Youth Center, where his educators reported that he was quick to grasp concepts but struggled to complete assignments due to behavior and focusing issues.  These problems occurred during an abbreviated period while J.S. was undiagnosed and unmedicated.

Contrary to the District's impression, J.S. had a successful academic career at Lower Merion High School and has been successful at his last two placements.  As a ninth grader at Lower Merion High School, five of J.S.'s nine classes were honors courses.  He earned As and Bs that year.  He enrolled in ten classes in his tenth-grade

17

year, six of which were honors courses.  Although he earned a D+ in Honors Pre-Calculus and a F in Honors English, he earned As and Bs in the remaining courses.  J.S.'s poor performance in Honors Pre-Calculus and Honors English was related to conflicts with teachers, not his academic abilities or intellect.

J.S. took the PSATs in 2021.  His total score was a 1380, with a 640 in Reading/Writing and a 740 in Math.  His Reading/Writing score was in the 95th percentile.  His Math score was in the 99th percentile.  He earned proficiency in all sections in the District's Fall Writing Grade 11 Assessment.

During the fall semester of his junior year, he was enrolled in AP Physics C Mechanics, Physical Education, AP Computer Science, Honors Film & Literature, Honors Pre-Calculus, and Honors US History.  As of January 28, 2022, he had a B+ in AP Physics C Mechanics; a B in Physical Education; a C+ in AP Computer Science; an A+ in Honors Film & Literature; a D- in Honors Pre-Calculus; and a D- in Honors US History.

J.S.'s academic success continued in his alternative placements.  In the spring 2022 semester at Fusion Academy, he was enrolled in English, Physics, Pre-Calculus, Spanish, and U.S. History.  He earned all As, with the exception of English and Spanish in which he earned A-s.  His cumulative GPA is 4.0.  In the fall of 2022, J.S. was enrolled in Calculus, English, Government, Personal Fitness, and Piano.  He continues to take these courses outside his Lifeworks daily schedule to earn credits for the fall semester of his senior year.

Absent an injunction, J.S. will suffer harm.  On the other hand, there will be no harm to the District if J.S. returns to Lower Merion High School.  Therefore, a balancing of the equities favors granting the preliminary injunction.

The Public Interest

Determining whether the public interest favors granting a preliminary injunction is "often fairly routine." *Issa*, 847 F.3d at 143 (quoting *Kos. Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004)). Where a plaintiff establishes a likelihood of success on the merits and a threat of irreparable harm, "it 'almost always will be the case' that the public interest favors preliminary relief." *Id.* (quoting *Am. Tel. & Tel. Co. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)).

The District argues that the public interest weighs against granting a preliminary injunction. It contends that "parents do not have a right to compel a school district to employ a specific methodology"[19] and that courts "lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy' presented in special education cases."[20] It does not identify a countervailing public interest. Nor does it contend that J.S. is a threat to his fellow students and teachers.

There is a strong public interest in education and ensuring that disabled children can safely access in-person education. *Plyler v. Doe*, 457 U.S. 202, 221 (1982) (citations omitted); *Issa*, 847 F.3d at 142–43; *Doe 1 v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668, 704–05 (E.D. Pa. 2022). There is also an interest in a child being educated in a school that provides a sound educational program without restrictive requirements that he does not need.

---

[19] Mem. Br. in Supp. of Def. Lower Merion Sch. Dist.'s Resp. to Mot. for Prelim. Inj. at 25, ECF No. 12-1 (citation omitted).

[20] *Id.* at 26 (citation omitted).

**Conclusion**

J.S has shown a likelihood of success on the merits and a likelihood that he will suffer irreparable harm unless he returned to Lower Merion High School.  The District will not suffer harm and there is no prevailing public interest preventing his return to Lower Merion High School.  Therefore, we granted the motion for a preliminary injunction.