**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **R.S. and R.S., Individually and on Behalf of J.S., a minor** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LOWER MERION SCHOOL DISTRICT** | : | **NO. 22-3478** |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                    **March 6, 2024**

This action under the Individuals with Disabilities Education Act ("IDEA") arises from J.S.'s removal from Lower Merion High School ("LMHS") after a manic episode he suffered in November of 2021.  Following his removal, parents R.S. and R.S. pursued a number of claims against Lower Merion School District ("District") in state administrative proceedings and in this court.  In one administrative proceeding, parents succeeded in preventing the District from expelling J.S.  In another, they achieved limited success, obtaining only compensatory education while failing to obtain tuition reimbursement, a finding that the District's proffered placement was inappropriate, and reenrollment at LMHS.

On review in this court, we affirmed the hearing officer's decision.  We found that the District's Individualized Education Plan ("IEP") was appropriate at the time it was made.  A year after J.S. was removed from LMHS, we granted parents' motion for a preliminary injunction and ordered J.S.'s reenrollment at LMHS in light of the change in his condition that had caused his manic episode.

The parents now move for attorneys' fees and costs under the IDEA's fee-shifting provision, seeking a total of $261,581.00 in fees and $402.00 in costs.  Opposing the

motion, the District argues that parents rejected a settlement offer that was more favorable than the relief they obtained, limiting fees to work predating the offer. Alternatively, the District argues that the fees should be substantially reduced because parents were not prevailing parties in federal court and achieved limited success in the administrative proceedings.

We conclude that the parents were substantially justified in rejecting the District's settlement offer and they achieved partial success. Therefore, as prevailing parties, they are entitled to an award of attorneys' fees under the IDEA, but not in the amount requested.

## Background[1]

From November 19 to 22, 2021, during his junior year at LMHS, J.S. suffered a manic episode with severe psychotic features.[2] He was hospitalized and given a working diagnosis of "ADHD by history, Unspecified Bipolar disorder. Rule out, Bipolar disorder, manic with psychotic features."[3] After his first manic episode, he began taking medication and undergoing both psychiatric and psychological treatment.

J.S. was hospitalized on November 22 after the first episode. Two days later, he was admitted to Horsham Clinic where he remained until December 2, 2021.[4] On December 20, after a second manic episode, he was taken by police to Bryn Mawr

---

[1] For a more detailed recitation of the factual and procedural history, see our March 6, 2023 Memorandum Opinion. Mem. Op., March 6, 2023, ECF No. 29 ["March 6, 2023 Mem. Op."].

[2] Final Decision and Order, Aug. 26, 2022 ¶ 107 (attached as Ex. D to the Decl. of Nicole Reimann, ECF No. 33-1 ["Reimann Decl."], ECF No. 33-6) ["Aug. 26, 2022 Decision"].

[3] Email from Jagruti Amin, Nov. 26, 2021, 1:34 PM, ECF No. 11-13 at 333.

[4] The Horsham Clinic Discharge Summary, ECF No. 11-13 at 323.

Hospital and put in restraints.[5]  Two days later, he was admitted to Montgomery County Youth Center where he suffered a third manic episode on January 4, 2022.[6]  He was discharged on January 19, 2022.[7]

During J.S.'s first manic episode, the District received numerous reports documenting his threatening, bizarre and inappropriate behavior, including threats to shoot his classmates and "shoot up the school."[8]  In response, the District issued a Notice of Recommendation for Expulsion and Notice of Expulsion Hearing.[9]  At the same time, the District initiated an evaluation to determine whether J.S. was a child with a disability as defined by the IDEA and to develop an Individualized Education Program ("IEP").[10] The District placed him in a District-funded remote educational program.[11]  Soon after, parents unilaterally enrolled him in a one-to-one private school, Fusion Academy, at their own expense.[12]

---

[5] Stipulation, Aug. 12, 2022 ¶¶ 9–10, ECF No. 11-6 ["Stipulation"].

[6] *Id.* ¶¶ 11–12.

[7] *Id.* ¶ 11.

[8] A more detailed account of J.S.'s behavior is set forth in our March 6, 2023 Memorandum Opinion. *See* March 6, 2023 Mem. Op. 6–8.

[9] The District initially suspended J.S. for three days.  *See* Temporary Suspension Notice, ECF No. 11-11 at 108.  After an informal hearing, the District decided to extend J.S.'s suspension to ten days and recommend his expulsion from LMHS. *See* Notice of Recommendation for Expulsion & Notice of Expulsion Hearing, Feb. 18, 2022, ECF No. 11-13 at 358.

[10] Prior Written Notice for Initial Evaluation and Request for Consent Form, ECF No. 11-11 at 109; Final Decision and Order, Apr. 28, 2022 ¶ 7 (attached as Ex. B to Reimann Decl., ECF No. 33-3) ["Apr. 28, 2022 Decision"].

[11] Apr. 28, 2022 Decision ¶ 6.

[12] *Id.* ¶ 12.

Parents filed a due process complaint ("First Due Process Complaint"), seeking an expedited hearing to prevent the District from expelling J.S.[13]  Hearings were scheduled for both the First Due Process Complaint and the District's expulsion notices.[14]

On February 24, 2022, counsel for the District sent parents' counsel a proposed written settlement agreement to resolve both the IDEA and the disciplinary proceedings.[15] Under the proposed agreement, J.S. could not attend school functions at LMHS without the written permission of a District representative until the second semester of the 2022-2023 school year ("2023 spring semester").[16]  The parents would withdraw the First Due Process Complaint and waive all special education claims against the District arising before the 2023 spring semester and until the District's timely offer of an IEP.[17]  In exchange, the District would pay for the parents' private school placement up to $39,350 (the cost of tuition at Fusion Academy) and hold disciplinary proceedings in abeyance unless and until J.S. sought enrollment in the District before the 2023 spring semester.[18]

Parents did not accept the offer.  Nonetheless, the District agreed to postpone the expulsion hearing in exchange for the family's agreement that they would not seek J.S.'s

---

[13] Compl. for Expedited Due Process, Feb. 9, 2022, ECF No. 11-13, at 352–57; Reimann Decl. ¶ 23; Decl. of Amy T. Brooks ¶ 4, ECF No. 34-2 ["Brooks Decl."]. Under the IDEA, a parent may submit a complaint and request an impartial due process hearing with respect to changes in a child's placement, including disciplinary changes in placement. 20 U.S.C. § 1415(f)(1)(A).

[14] Brooks Decl. ¶¶ 5–6.

[15] *Id.* ¶¶ 8–9, 12.

[16] Educ. Servs. Agreement ¶ B(5) (attached as Ex. 2 to Brooks Decl., ECF No. 34-2) ["Educ. Servs. Agreement"].

[17] *Id.* ¶¶ B(2)–(6), C(1)–(2).

[18] *Id.* at ¶¶ A(1)–(3).

return to LMHS prior to March 22, 2022.[19]  In response, parents withdrew the First Due Process Complaint.[20]

On March 11, 2022, the District issued an Evaluation Report ("2022 ER").[21]  It considered information from the parents, J.S.'s treating psychologist and psychiatrist, school records, school personnel, interviews of J.S. and test results.[22]  The 2022 ER concluded J.S. was a child with Bipolar Disorder I and an emotional disturbance in need of special education.[23]

On March 14, 2022, the District reissued the Expulsion Notice.[24]  It is not clear why the District did so.[25]

On March 17, 2022, at an IEP meeting, the District determined that J.S. was a child with a disability under the IDEA and his conduct in November 2021 was a manifestation of his disability.[26]  It offered an IEP that provided for a therapeutic out-of-district placement

---

[19] Brooks Decl. ¶ 17.

[20] *Id.* ¶ 16; Reimann Decl. ¶ 26.

[21] Evaluation Rep. for J.S., Mar. 11, 2022, ECF No. 11–11 at 184–236 ["2022 ER"].

[22] *Id.*; Aug. 26, 2022 Decision ¶¶ 114–26.

[23] Aug. 26, 2022 Decision ¶ 127.

[24] Notice of Recommendation for Expulsion & Notice of Expulsion Hr'g, March 14, 2022, ECF No. 11-13 at 368–70.

[25] The hearing officer noted that while there was no dispute the District reissued the notice on March 14, 2022, the parties disagreed as to the status of the disciplinary proceedings at that time. Apr. 28, 2022 Decision ¶ 8.  The parents took the position that J.S. was under active threat of expulsion. *Id.* at 5.  The District argued that no expulsion proceedings were pending, but that there were "circumstances under which the District would convene an expulsion hearing." *Id.* at 6.  Specifically, the District intended to resume expulsion proceedings if parents rejected the IEP and attempted to re-enroll J.S. at LMHS. *Id.* at 6.  The hearing officer did not resolve the issue, deeming it irrelevant to his determination that the District could not expel J.S. *Id.*

[26] Stipulation ¶¶ 13–14.

at Lifeworks based on his need for "therapeutic, emotional, behavioral, and social supports."[27]  Parents rejected the proposed placement.

After the IEP meeting, parents filed a second due process complaint against the District ("Second Due Process Complaint").[28]   The hearing officer bifurcated the Complaint into two proceedings, one expedited and one non-expedited.[29]  The expedited proceeding considered expulsion.[30]   The non-expedited proceeding addressed three issues:

> (1) Whether the District violated J.S.'s IDEA rights to a free appropriate public education ("FAPE") by not providing special education during the period when J.S. was not determined to be a child with a disability ("child find claim");
>
> (2) Whether the District must reimburse the parents for tuition at Fusion Academy ("tuition reimbursement claim"); and
>
> (3) Which of the parties' competing placement options was appropriate for J.S. ("placement claim").[31]

Of the three claims in the non-expedited proceeding, parents succeeded only on the child find claim.  Finding that the District failed its child find obligations to identify and evaluate J.S. as a child with a disability after he started exhibiting concerning behavior, the hearing officer awarded compensatory education from February 1, 2021 to November

---

[27] Aug. 26, 2022 Decision ¶ 141; *see also* Individualized Educ. Program for J.S., Mar. 17, 2022, ECF No. 11-11 at 237–81.

[28] Due Process Compl., March 24, 2022, ECF No. 11-20 ["Second Due Process Compl."].

[29] Apr. 28, 2022 Decision 3.

[30] *Id.*

[31] Aug. 26, 2022 Decision 3.

19, 2021.[32]   The parties agreed that the value of the compensatory education was $17,160.[33]

The hearing officer denied the more significant tuition reimbursement claim.   He determined that parents' placement of J.S. in Fusion Academy was not appropriate based on his need for emotional support.[34]   He also denied the claim for placement at LMHS. He found that both the 2022 IEP and the Lifeworks placement offered by the District were appropriate and did not violate J.S.'s right to be educated in the least restrictive environment.[35]   The net effect was that J.S. was not permitted to return to LMHS and his placement at Fusion Academy was not appropriate.

On August 30, 2022, parents filed this action.[36]   They challenged the hearing officer's findings on the tuition reimbursement and placement claims.[37]   They also complained that he failed to address the issue of whether the District discriminated against J.S. in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504").[38]

In November 2022, while the federal action was pending, the parents requested the District to reevaluate or fund an independent educational evaluation ("IEE") so that J.S. could return to LMHS.[39]   The District filed a due process complaint ("Third Due

---

[32] *Id.* at 37.

[33] Brooks Decl. ¶ 18.

[34] Aug. 26, 2022 Decision 35.

[35] *Id.* at 35–37.

[36] Compl., ECF No. 1.

[37] *Id.* ¶ 21.

[38] *Id.*

[39] Ruling Re: Mot. to Dismiss, Jan. 17, 2023 ¶ 12 (attached as Ex. E to Reimann Decl., ECF No. 33-7) ["Jan. 17, 2022 Ruling"].

Process Complaint") as it is statutorily required to do when a parent requests an IEE.[40] The District moved to dismiss its own complaint on collateral estoppel or *res judicata* grounds, arguing that the hearing officer already adjudicated the appropriateness of the District's evaluation and the IEP.[41]  The parents opposed dismissal and requested an evidentiary hearing.[42]  Finding that there was no "material change" in the student's condition to necessitate a re-evaluation, the hearing officer dismissed the Third Due Process Complaint.[43]  Parents did not appeal.

In the federal action, on September 12, 2022, the parents moved for a preliminary injunction ordering J.S.'s reenrollment at LMHS with special education supports.[44]  The parties filed cross-motions for summary judgment on the administrative record.[45]  Three months later, parents filed a motion to supplement the administrative record with updated academic and psychiatric treatment records to demonstrate J.S.'s progress and suitability for reenrollment.[46]

We granted the motion to supplement the administrative record solely for the purpose of considering the motion for preliminary injunction.[47]  After a hearing, we granted

---

[40] *Id.* ¶¶ 13–15.

[41] *Id.* at 1–2.

[42] *Id.* at 2.

[43] *Id.* at 10.

[44] Pls' Mot. for Prelim. Inj., ECF No. 5.

[45] Def. Lower Merion School District's Mot. for Summ. J. on the Admin. Record, ECF No. 14; Pls.' Mot. for J. on the Admin. Record, ECF No. 15.

[46] Pls.' Mem. of L. in Supp. of Their Mot. to Supplement the Administrative Record in Further Supp. of Mot. for Prelim. Inj. and Mot. for J. on the Admin. Record 3, ECF No. 19-1 ["Pls.' Mot. to Supplement"].

[47] Mem. Op., Feb. 24, 2023, at 10–11, ECF No. 24 ["Feb. 24, 2023 Mem. Op."].

the motion for preliminary injunction because we found a substantial likelihood that parents would succeed in demonstrating that LMHS was then an appropriate placement for J.S.'s stabilized condition while the parties worked toward a new education plan.[48]

Pursuant to our order, J.S. reenrolled at LMHS on January 31, 2023,[49] two days after the start of the 2023 spring semester.[50]

On March 6, 2023, we denied parents' motion for judgment on the administrative record and granted the District's motion.[51]  We did not consider the supplemental evidence and evaluated the hearing officer's decision in light of the circumstances existing at the time it was made.  We held that the District's IEP and offer of placement was appropriate, parents were not entitled to tuition reimbursement for J.S.'s enrollment at Fusion Academy, and the District did not discriminate against J.S. in violation of Section 504.[52]  Therefore, we affirmed the hearing officer's decision in full and entered judgment for the District.[53]

---

[48] *Id.* at 15.

[49] Decl. of Kimberly Fraser ¶ 3 (attached as Ex. B to Lower Merion School District's Mem. of L. in Opp'n to Pls' Mot. for Attorneys' Fees and Costs, ECF No. 34 ["District's Opp'n"], ECF No. 34-3).

[50] *Id.* ¶ 4.

[51] March 6, 2023 Mem. Op.

[52] *Id.* at 43, 47, 48.

[53] *Id.* at 48.

Parents have moved for an award of attorneys' fees as prevailing parties under the IDEA's fee-shifting provision.[54]  They request $261,581.00 in fees and $402.00 in costs.[55] The firm of Batchis Nestle & Reimann, LLC requests $237,476.50 in fees for the following services:

- 30.5 hours for work on the resolution of the expedited due process matter;[56]

- 221.2 hours for work on the non-expedited due process matter (150.9 for work through the last hearing session, and another 70.3 for the findings of fact and closing memorandum of law);[57]

- 279.9 hours for work on the federal court proceedings;[58]

- 57.2 hours for "Additional Work" performed from October 13, 2023 through January 3, 2023, described as time spent requesting that the District reevaluate J.S.'s placement in response to updated opinions from his mental healthcare providers, and defending the Third Due Process Complaint;[59] and

- 49 hours for work on the fee petition and a failed settlement conference on the matter of attorneys' fees.[60]

---

[54] Parents also claim attorneys' fees and costs under Section 504. However, parents did not obtain relief under Section 504 at either the administrative hearing or in federal court. Therefore, parents are not prevailing parties for purposes of Section 504 and are not entitled to an award under Section 504's fee-shifting provision. 29 U.S.C. § 794a ("In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.").

[55] Reply Mem. of L. in Further Supp. of Pls.' Mot. for Attorneys' Fees and Costs 1, ECF No. 39 ["Pls.' Reply"].

[56] Reimann Decl. ¶ 74.

[57] *Id.* ¶¶ 75–76.

[58] *Id.* ¶¶ 78–79.  Nicole Reimann states that her firm billed 21.1 hours preparing a reply on the motion to supplement the administrative record and on the January 24, 2023 hearing. *Id.* ¶ 79.  However, the invoices and the Reimann Declaration's tabular accounting of these hours indicates that her firm billed 20.1 hours for this work (14.2 for Nicole Reimann and 5.9 for Lisa Reimann).

[59] *Id.* ¶¶ 80–82.

[60] Reimann Decl. ¶ 83; Suppl. Decl. of Nicole Reimann ¶ 3, ECF No. 39-1 ["Suppl. Reimann Decl."].

Raffaele and Associates LLC requests $24,104.50 for defending against the District's expulsion attempts, preparing the First Due Process Complaint, and attempting to reach a settlement of the due process and disciplinary matters.[61]

## Analysis

The prevailing party in an IDEA proceeding is entitled to an award of reasonable attorneys' fees. 20 U.S.C. § 1415(i)(3)(B)(i). Determining a reasonable fee requires a two-part analysis. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). We must first determine a reasonable hourly rate, and then the number of hours reasonably spent. *Maldonado*, 256 F.3d at 184. We multiply these two numbers to yield the lodestar, which is presumed to be a reasonable fee. *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017) (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 542, 552 (2010)).

### *Hourly Rate*

Fees awarded in an IDEA case "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). Thus, the requested rate is allowable if it does not exceed the community's prevailing market rate.

Batchis, Nestle & Reimann, LLC is requesting rates of $450/hour for attorneys Nicole Reimann and Jennifer Nestle; $340/hour until September 1, 2022 and $345/hour after for attorney Jessica Limbacher; $250/hour until August 31, 2022 and $275/hour after for attorney Jeffrey Basch; and $150/hour until September 30, 2022 and $160/hour after

---

[61] Decl. of Michael D. Raffaele ¶¶ 16–18, ECF No. 33-11 ["Raffaele Decl."].

for paralegal Lisa Reimann.[62]   Raffaele & Associates, LLC is requesting $425/hour for attorneys Michael Raffaele and Katie Metcalfe.[63]

The District does not object to the reasonableness of these rates.  Indeed, as reflected in the declarations, the rates are comparable to those in the market.[64] Therefore, we accept the requested hourly rates as reasonable.

*Time Spent*

An award for attorneys' fees in an IDEA case must be reduced when the time and the services performed "were excessive considering the nature of the action or proceeding."   20 U.S.C. § 1415(i)(3)(F)(iii). We reduce hours that are excessive, redundant, or otherwise unnecessary; were spent unsuccessfully litigating claims; and are inadequately documented.  *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434; *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 178 (3d Cir. 2001)).  A fee petition should include fairly detailed information for time devoted to various activities. *Gelis v. BMW of N. Am.,* LLC, 49 F.4th 371, 380 (3d Cir. 2022) (quoting *Keenan v. City of Philadelphia,* 983 F.2d 459, 473 (3d Cir. 1992)). Although a fee petition need not provide "the exact number of minutes spent nor the precise activity to which each hour was devoted," it must be specific enough to determine if the hours claimed are reasonable for the work performed.  *Id.* at 379–80 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)).

The District objects to several time entries on the basis that they were inadequately

---

[62] Reimann Decl. ¶¶ 53, 56, 60, 65, 70.

[63] Raffaele Decl. ¶¶ 8, 15.

[64] *Id.* at ¶¶ 8, 15; Reimann Decl. ¶¶ 15, 53, 56, 60, 66, 70; Decl. of Judith Gran ¶¶ 13–19, ECF No. 33-10.

documented or not reasonably expended on the litigation.  It argues that a total of $12,350 should be deducted from Raffaele and Associates' fee.[65]  Raffaele and Associates voluntarily deducted $8,202.50 for work on a juvenile matter.[66]  The District complains that it is impossible to determine whether parents deducted all time spent on the juvenile matter because Raffaele and Associates failed to explain where the deductions were made and used block billing.[67]

    We agree that Raffaele and Associates inadequately documented the time entries deducted as related to the juvenile matter.  However, our review of the invoices suggests that $8,202.50 in attorney services can reasonably be attributed to the juvenile matter.[68]  The invoices also indicate that two individuals with the initials "GD" and "CS" billed $4,809.50 on the due process and expulsion matters.[69]  Michael Raffaele's declaration states that only he and attorney Katie Metcalfe worked on the due process matter.  He makes no mention of a "GD" or "CS," nor does he make any attempt to justify their respective hourly rates.  Accordingly, we deduct the 13.9 hours, or $4,809.50, billed by "GD" and "CS."

    The District also argues that the IDEA does not allow fees for time spent preparing

---

[65] District's Opp'n 11.

[66] Raffaele Decl. ¶ 17.

[67] District's Opp'n 11.  Block billing is a time-keeping method in which an attorney records a total amount of time spent on several different tasks.  *Simring v. Rutgers*, 634 F. App'x 853, 859 (3d. Cir. 2015). Block billing will be upheld so long as there is a reasonable correlation between the various tasks listed in a block and the time spent completing them.  *United States v. NCH Corp.*, No. 50-881, 2010 WL 3703756, at *4 (D.N.J. Sept. 10, 2010).

[68] *See* Invoices of Raffaele & Associates, LLC (attached as Ex. 1 to Raffaele Decl., ECF No. 33–11) ["Raffaele & Associates Invoices"].  This does not include the "GD" entries on December 1, 2021, February 21, 2022, and February 22, 2022 that were discounted in full.  Raffaele & Associates did not include the discounted hours in their fee request.

[69] *Id.*

for the suspension hearing on January 25, 2022, and the expulsion hearing.[70] Pennsylvania law requires a school district to hold an "informal hearing" prior to suspending a student, and a "formal hearing" before expelling a student. 22 Pa. Code §§ 12.6, 12.8.[71] The IDEA does not. The IDEA provides for fees "in any action or proceeding brought under this section." 20 U.S.C. § 1415(i)(3)(B)(i). Although the IDEA establishes notice requirements for disciplinary actions and the right to initiate due process proceedings to challenge or prevent improper disciplinary actions, it does not create a right to a pre-discipline hearing itself. *See* 20 U.S.C. § 1415(k). Therefore, because the District's expulsion and suspension hearings were not "action[s] or proceeding[s] brought under" the IDEA, Raffaele and Associates is not entitled to fees for time spent on those hearings.

The only time entries that reference preparations for the expulsion hearing were recorded by the individual with the initials "GD," whose entries we have already deducted. Thus, we deduct 2 hours, or $850.00, for time spent on the informal suspension hearing.[72]

The District also objects to the time Raffaele and Associates spent filing and preparing for a hearing on the First Due Process Complaint which the parents ultimately withdrew.[73] Parents withdrew the First Due Process Complaint in an effort to cooperate

---

[70] District's Opp'n 11; District's Proposed Deductions from Raffaele and Associates' Invoices (attached as Ex. C to District's Opp'n, ECF No. 34-4).

[71] *See* Brooks Decl. ¶ 7 ("The expulsion notice was sent pursuant to the requirements of 22 Pa. Code § 12.8. . . .").

[72] *See* Raffaele and Associates Invoices. There are two time entries that mention the informal suspension hearing. We deduct the 1.10 hours recorded on January 20, 2022. The 1.80 hours billed on January 24, 2022 mention the hearing (for which fees are not recoverable) and settlement negotiations and J.S.'s manifestation determination (for which fees are recoverable). We deduct half of this entry, or 0.90 hours, for time spent on the suspension hearing.

[73] District's Opp'n 11.

with the District.[74]  The District agreed to postpone the expulsion hearing until the week of March 15, 2022 in exchange for the parents' agreement that they would not seek J.S.'s return to LMHS before March 22, 2022.[75]  In response to this agreement, Parents withdrew the First Due Process Complaint.[76]  They reinstated it only after the District reissued the expulsion notice.[77]  The First Due Process Complaint sought to prevent the District from expelling J.S.  This is the same relief sought in the Second Due Process Complaint and obtained in the expedited due process hearing.  Counsel's attempts to resolve the disciplinary matter without a due process hearing were reasonably expended.

The District argues that $15,938.00 should be deducted for the work Batchis, Nestle & Reimann LLC did between October 13, 2022 through January 3, 2023 requesting a re-evaluation based on updated records and defending against the Third Due Process Complaint.[78]

The District filed the Third Due Process Complaint because it was statutorily obligated to do so in response to parents' request for an IEE.  The Third Due Process Complaint was resolved in the District's favor.  Parents did not appeal.  Work on the Third Due Process Complaint was unrelated to any relief they obtained in this litigation.

---

[74] Reimann Decl. ¶ 26; Brooks Decl. ¶¶ 15–17.

[75] Brooks Decl. ¶ 17; Email from Amy T. Brooks, Feb. 23, 2022 (attached as Ex. 4 to Brooks Decl.).

[76] Reimann Decl. ¶ 26.

[77] *Id.*  ¶¶ 27–30.

[78] District's Opp'n 15–16.

Therefore, we deduct 15.6 hours, or $5,831.00, for time spent defending the Third Due Process Complaint.[79]

Time spent requesting a re-evaluation and obtaining additional clinical opinions about J.S.'s treatment progress is compensable.   As part of the effort to get a re-evaluation, counsel obtained updated opinions from J.S.'s treating mental health clinicians, Dr. David Danish and Dr. Robert Klein, regarding his condition in November 2022.[80]   These doctors opined that J.S.'s Bipolar I disorder was well-managed with therapy and medication, and J.S. was ready to return to LMHS.[81]

Parents then moved to supplement the administrative record with the doctors' reports and updated academic records. We allowed parents to supplement the record in considering the preliminary injunction.[82] In granting a preliminary injunction and ordering J.S.'s reenrollment at LMHS, we relied on the opinions of Drs. Danish and Klein. We found that they demonstrated J.S.'s moods were stable, he was compliant with his medication, and he was likely to be academically successful at LMHS.[83]   In other words, obtaining updated clinical opinions from Drs. Danish and Klein directly contributed to J.S.'s return to LMHS.   Therefore, we do not deduct fees for counsel's work requesting a re-evaluation of J.S. and obtaining updated records of his treatment progress.

---

[79] This deduction is based on all time entries from October 13, 2022 through January 3, 2023 that describe work defending and preparing for the Third Due Process Complaint.  *See* Invoices from Batchis Nestle & Reimann LLC (attached as Ex. A to Reimann Decl., ECF No. 33-2) ["Batchis Nestle & Reimann Invoices"].  On November 28, 2022, Nicole Reimann block-billed 5.8 hours for tasks relating to both the Third Due Process Complaint and the request for re-evaluation.  We deduct half of these hours to reflect the portion of this time Nicole Reimann spent defending the Third Due Process complaint.

[80] Pls.' Mot. to Supplement 6–7.

[81] *Id.*

[82] Feb. 24, 2023 Mem. Op. 10–12.

[83] *Id.* at 14–15.

Assessing the reasonableness of the requested hourly rate and deducting excessive and duplicative time does not end the analysis.  We consider two additional principles governing the awarding of attorneys' fees.

The first is the IDEA's "ten-day offer" provision.  A parent may not receive attorneys' fees "for services performed subsequent to the time of a written offer of settlement" if the relief obtained was less favorable than the offer.  20 U.S.C. § 1415(i)(3)(D)(i).

The second is the prevailing party's degree of success.  The Supreme Court has instructed that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."  *Hensley*, 461 U.S. at 440.  Accordingly, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  *Id.*

*Ten-Day Offer*

Under the IDEA's ten-day offer provision, parents may not be awarded fees for work performed after they have rejected a written settlement offer where (1) the offer is made more than ten days before the administrative proceeding; (2) the offer is not accepted within ten days; and (3) the relief parents ultimately obtain is less favorable than the offer of settlement.  20 U.S.C. § 1415(i)(3)(D).  Nevertheless, even if the final result is less favorable than the offer, parents may still be entitled to attorneys' fees if they were "substantially justified" in rejecting the settlement offer.  *Id.* § 1415(i)(3)(E).

The District argues that parents are only entitled to recover fees for work performed before the District's February 24, 2022 settlement offer because the relief parents

ultimately secured was less favorable than what was offered.[84]

The District extended its settlement offer to resolve "all elements of the dispute which was the subject of the Disciplinary Proceedings" and "the Due Process Complaint, filed on February 9, 2022."[85]  The issue was whether the District could expel J.S. for his conduct in November 2021.  In other words, these proceedings were limited to disciplinary issues.

Those proceedings did not address claims regarding J.S.'s educational placement and programming that parents later raised in their Second Due Process Complaint. This placement claim did not arise until the District completed J.S.'s evaluation and proposed the IEP on March 17, 2022—after the February 24, 2022 settlement offer.

As noted, the settlement offer was made to resolve the First Due Process Complaint.  At the time of the offer, the only pending IDEA proceeding was the First Due Process Complaint challenging disciplinary measures.   The parents had not filed the Second Due Process Complaint regarding placement.  Once they did, the District could have offered to settle.  It did not.

The District's settlement offer was made in the context of the initial Complaint.  It expired when the parents withdrew the First Due Process Complaint.  The District did not renew its offer.

Even if the offer remained pending, parents were justified in not accepting the District's offer because they were awaiting determinations that were crucial to evaluating what was best for J.S.  At the time the District made the offer, parents were awaiting the

---

[84] District's Opp'n 9–10.

[85] Educ. Servs. Agreement 1.

outcome of the District's manifestation determination, evaluation, and proposed IEP. These determinations significantly impacted what placement and support was appropriate.  Without this information, the parents were not in a position to assess any offer affecting J.S.'s placement.

Because parents were substantially justified in rejecting the District's February 2022 settlement offer, we conclude that the IDEA's ten-day provision does not bar attorneys' fees and costs incurred after the time of the offer.

*Prevailing Parties*

To be eligible for attorneys' fees under the IDEA, parents must be prevailing parties. *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 223–24 (3d Cir. 2017) (citing 20 U.S.C. § 1415(i)(3)(B)(i)).  To prevail under the IDEA, a party must obtain relief that materially alters the legal relationship between the parties and is judicially sanctioned.  *Id.* (quoting *Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 292 (3d Cir. 2016)); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept of Health & Hum. Res.,* 532 U.S. 598, 604–05 (2001).  A party achieves a material alteration of the parties' legal relationship if relief is based on a merits determination.  *M.R.*, 868 F.3d at 224.

The prevailing party standard is a "generous formulation."  *John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 558 (3d Cir. 2003) (quoting *Hensley*, 461 at 433).  Parents need not obtain all of the relief requested, nor must they ultimately win the case.  *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012). They need only succeed on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Id.* (quoting *J.O. ex rel. C.O. v. Orange Twp., Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002))*; Buckhannon Bd. & Care Home*, 532 U.S.

at 603–04.

In the expedited proceedings, the hearing officer prevented the District from expelling J.S.  In the non-expedited matter, the hearing officer awarded $17,160 for compensatory education.  Each of these constitutes a material alteration of the legal relationship between the District and parents.  That the parents did not succeed on their more significant claims does not deny them status as prevailing parties.

The District argues that parents are not eligible for $119,853.50 in fees arising from the federal litigation because they are not prevailing parties.[86]  The District contends that the parents' success on the preliminary injunction does not grant them prevailing party status because they lost on the ultimate merits of the case when we granted the District's motion for judgment on the administrative record, denied parents' motion for judgment on the administrative record, and affirmed the hearing officer's decision.[87]

Parents argue that their success in obtaining the preliminary injunction grants them prevailing party status in federal court because it granted them the relief they had been seeking since the beginning—J.S.'s reenrollment at LMHS.[88]

Success obtaining a preliminary injunction can confer "prevailing party" status if it constitutes meaningful relief on the merits.  *M.R.*, 868 F.3d at 226 (citing *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 228–30 (3d Cir. 2008)).  A preliminary injunction based on "its own, independent merits" confers "prevailing party" status on the

---

[86] District's Opp'n 14.

[87] *Id.*

[88] Pls.' Reply 7.

parents.  *Id.* at 229.  If the order granting the preliminary injunction ends the litigation, the winner is a prevailing party.  Here, the District did not appeal and accepted the ruling.

Because parents obtained judicially sanctioned material alterations of the legal relationship of the parties at both the federal and state administrative stages, they are prevailing parties for purposes of the IDEA.  Therefore, they are entitled to an award of attorneys' fees.

### *Degree of Success – Reasonableness of Fees*

Considering the prevailing party's relative success, we may adjust the fee accordingly.  *Hensley*, 461 U.S. at 434.  This is particularly important where plaintiffs are deemed prevailing even though they succeeded on only some claims.  *Id*.

When parents prevail on only some claims, we must carefully measure success by ascertaining whether the claims were related and intertwined or distinct.  In some cases, parents may present "distinctly different claims for relief that are based on different facts and legal theories."  *Id.* at 434–35.  In such a case, an attorney's work on an unsuccessful claim cannot have been reasonably "expended in pursuit of the ultimate result achieved."  *Id.* at 435 (quotation omitted).  Therefore, because unrelated claims are treated as if they had been raised in separate actions, fees are not awarded for services performed in connection with unsuccessful claims unrelated to parents' successful claims.  *Id.*

In cases where parents present a single claim for relief, or several claims sharing a common core of facts or related legal theories, a court should not assess a prevailing party's overall success on a claim-by-claim basis.  *Id.* at 435; *Rena C. v. Colonial Sch. Dist.*, 840 F. App'x 676, 682 (3d Cir. 2020).  Instead, a court should focus on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably

expended on the litigation." *Hensley*, 461 U.S. at 435; *see also Rena C.*, 840 F. App'x at 682 n.9.

If the plaintiff has obtained "excellent results," the attorney should receive a full fee. *Hensley*, 461 U.S. at 435. On the other hand, if the plaintiff has achieved partial or limited success, a court may reduce the fee award downward, even if plaintiff's claims were interrelated. *Id.* at 436*; see also Cent. Bucks Sch. Dist. v. Q.M. ex rel. M.M.,* No. CV 22-1128, 2022 WL 17339037, at *16 (E.D. Pa. Nov. 29, 2022); *I.W. ex rel. N.W. v. Sch. Dist. of Phila.*, No. CV 14- 3141, 2016 WL 147148, at *20 (E.D. Pa. Jan. 13, 2016).

The District argues that the fee award should be reduced to account for parents' partial success. It notes that the preliminary injunction was the parents' sole success in federal court.[89] The District also argues that because parents only succeeded on one of their three due process claims, the time billed on the non-expedited administrative hearing should be reduced by at least two thirds.[90]

Parents contend that they obtained excellent results in this litigation, pointing to the compensatory education award and the injunction ordering J.S.'s return to LMHS.[91] They argue that fees cannot be deducted for the unsuccessful claims that they contend were factually and legally related to their successes at both the administrative and federal proceedings.[92]

For the purpose of measuring the parents' degree of success, we examine three

---

[89] District's Opp'n 16–17.

[90] *Id.* at 15.

[91] Pls.' Reply 9–10.

[92] *Id.* at 1–2, 9–10.

temporally and factually different proceedings—the expedited hearing challenging J.S.'s expulsion; the non-expedited hearing regarding placement; and the injunction seeking reenrollment in LMHS.  Each proceeding presented discrete claims.  Each involved "distinctly different claims for relief that are based on different facts and legal theories." *See Hensley*, 461 U.S. at 434.

The parents' claims in the expedited due process matter arose from the IDEA's prohibition on unilateral disciplinary changes in placement for manifestations of J.S.'s disability.[93]  *See* 20 U.S.C. § 1415(k)(1)(E)–(F).  Factually, the expedited proceedings were based on the District's attempts to expel J.S. for behavior that it had already determined to be a manifestation of his disability.  Parents' sole demand for relief in the expedited matter was an order prohibiting the District from expelling J.S. for his conduct in November 2021.  They achieved that goal.

The parents' claims in the non-expedited due process proceeding arose from the District's obligation to provide J.S. a FAPE in the least restrictive environment through an appropriate IEP.[94]  *See* 20 U.S.C. §§ 1412(a)(1)(A), 1414(d).  The factual record consisted of evidence of J.S.'s special education needs up to and immediately following his November 2021 manic episode, and the District's March 2022 IEP and evaluation of J.S.  The parents sought compensatory education, reimbursement for J.S.'s tuition at Fusion Academy, and a finding that the District's 2022 IEP offering placement at Lifeworks was not appropriate.  After failing to achieve success on the significant claims and gaining only limited relief at the administrative level, parents continued to pursue the

---

[93] Apr. 28, 2022 Decision 6–7.

[94] Aug. 26, 2022 Decision 27–28.

non-expedited due process claims in federal court, seeking review of the hearing officer's findings and filing a motion for judgment on the administrative record.

The preliminary injunction proceedings involved a temporally and factually distinct issue.  The sole question presented was whether the placement remained appropriate in light of changed circumstances.[95]

The preliminary injunction determination was based on different facts than the non-expedited due process claims.  The supplemental record consisted of updated academic transcripts and mental health treatment records documenting J.S.'s condition as of February 2023.  Those facts did not form the basis of the previous proceedings.  The new evidence of J.S.'s mental status, contrasted against that of a year earlier when his condition was not managed, showed that it had changed significantly.

In short, the expedited due process, the non-expedited due process, and the preliminary injunction proceedings involved distinct facts and claims for relief.  Because these proceedings involved distinct, unrelated claims, we consider them as if they "had been raised in separate lawsuits" for purposes of measuring parents' degree of success. *See Hensley*, 461 U.S. at 435.

In the expedited due process and preliminary injunction proceedings, parents obtained the results they sought. In the expedited proceedings, they obtained an order preventing the District from expelling J.S. for his conduct of November 2021. In the preliminary injunction proceedings, parents also achieved success.  We granted their motion to supplement the administrative record for purposes of considering the motion for a preliminary injunction.  After a hearing, we granted an injunction and ordered

---

[95] Feb. 24, 2023 Mem. Op. 13.

reenrollment.   Because parents succeeded in obtaining the relief they sought in the expedited administrative and preliminary injunction matters, we shall award a fee for all hours reasonably expended on those proceedings.   *Hensley*, 461 U.S. at 435.

The non-expedited due process claims are a different matter.   Parents obtained limited success relative to the relief they sought on those claims.

At the non-expedited administrative hearing, parents sought compensatory education, reimbursement for J.S.'s private school tuition, and a finding that the District's out-of-district placement for J.S. was inappropriate at the time it was made.   Parents obtained relief only on the compensatory education claim and that success was partial. The hearing officer awarded no compensatory education for the period preceding March 24, 2020.[96]   He also found no evidence that J.S. was denied a FAPE between March 24, 2020 and February 1, 2021, or during his brief enrollment in remote schooling following his removal from LMHS.[97]   Hence, he awarded compensatory education only for the period between February 1, 2021 and November 19, 2021.[98]

Parents received no relief on the more significant tuition reimbursement and placement claims.   The hearing officer awarded no tuition reimbursement because he determined that parents' unilateral placement at Fusion Academy was not appropriate for J.S.'s emotional support needs.   He further found that the District's 2022 IEP and out-of-district placement offer was reasonably calculated to provide a FAPE in the least

---

[96] Aug. 26, 2022 Decision 31–32.

[97] *Id.* at 323–4.

[98] *Id.* at 32–34, 38.

restrictive environment based on J.S.'s needs at the time.  Parents did not secure J.S.'s return to LMHS through the state administrative proceedings.

Parents appealed the hearing officer's decision to federal court.  They obtained no relief.  We affirmed the hearing officer's decision in full, granted the District's motion for judgment on the administrative record, and denied parents' motion for judgment on the administrative record.  Thus, we deduct the 145.2 hours, or $49,975.00, billed for pursuing the administrative appeal from the hearing officer's decision.[99]

Importantly, parents did not achieve J.S.'s return to LMHS through the non-expedited proceedings and the administrative appeal.  They achieved his return to LMHS through their motion for a preliminary injunction which was based on its own temporally and factually distinct merits determination.

The only success parents achieved in the non-expedited due process matter was a partial award of compensatory education.  Therefore, the amount of hours expended on the non-expedited due process claims as a whole will be reduced to reflect this limited success.  *See Hensley*, 461 U.S. at 436.

In reducing a fee award to account for limited success, there is no precise rule or formula.  *Id.*  We may "attempt to identify specific hours that should be eliminated," or we may "simply reduce the award to account for the limited success."  *Id.* at 436–37.

Parents' counsel billed a total of 221.2 hours, or $81,040.00, pursuing the non-expedited due process claims at the administrative hearing.[100]  Because parents obtained partial relief on one of their three claims, and what they did obtain on that claim was less

---

[99] This consists of all time entries involving the motions for judgment on the administrative record from September 20, 2022 through October 12, 2022. *See* Batchis Nestle & Reimann LLC Invoices.

[100] Reimann Decl. ¶¶ 75-77.

than they had sought, we reduce this time by 60%.[101]  *See, e.g.*, *A.S. ex rel. V.S. v. Colts Neck Bd. of Educ.*, 190 F. App'x 140, 143 (3d Cir. 2006) (affirming an 80% reduction in attorneys' fees "due to the fact that [plaintiffs] prevailed on only one of their claims and, even on that claim, were not completely successful").

*Fee Petition*

A party who is awarded attorneys' fees is also entitled to reimbursement for the time spent litigating a fee application.  *Planned Parenthood of Cent. N.J. v. Att'y Gen. of State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002).  We must conduct a separate lodestar analysis for the fee proceeding and reduce the lodestar if necessary to reflect the prevailing party's partial success.  *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924–25 (3d Cir. 1985); *Maldonado*, 256 F.3d at 188.[102]

Parents' counsel spent 23.40 hours (19.3 for Nicole Reimann and 4.1 for Lisa Reimann) drafting the motion for attorneys' fees.[103]  By the time they filed their reply after

---

[101] We apply two different methods of reduction to account for parents' partial success on the non-expedited due process claims.  For the portion of time billed after filing the federal action, counsel's invoices identify which hours they spent litigating the motions for summary judgment on the administrative record and which hours they spent on the preliminary injunction.  Therefore, we are able to identify "specific hours that should be eliminated" to account for parents' lack of success on summary judgment. *See Hensley,* 461 U.S. at 436.

For the portion of time billed for the non-expedited due process hearing, counsel's invoices do not identify which hours they spent pursuing compensatory education and which hours they spent pursing tuition reimbursement and placement at LMHS.  Because we are unable to determine the specific number of hours spent exclusively on the unsuccessful claims at the administrative level, we "simply reduce the award to account for the limited success." *Id.*; *see also, e.g.*, *M.A. v. Wall Twp. Bd. of Educ.*, No. CV 20-5218 (JBD), 2023 WL 8064982, at *10 (D.N.J. Nov. 21, 2023) (finding a 75% reduction "reasonably and fairly reflects [parent]'s very limited success in her federal appeal"); *MP by & through VC v. Parkland Sch. Dist.*, No. 5:20-CV-04447, 2021 WL 5177012, at *9 (E.D. Pa. Nov. 5, 2021) (applying a 50% downward deviation based on parents' partial success).

[102] This approach originated in cases involving other fee-shifting statutes, but the Third Circuit has applied it in the IDEA context. *See, e.g.*, *Pocono Mountain Sch. Dist. v. T. D.*, No. 22-1787, 2023 WL 2983501, at *6 (3d Cir. Apr. 18, 2023); *Maria C. ex rel. Camacho v. Sch. Dist. of Philadelphia*, 142 F. App'x 78, 83 (3d Cir. 2005).

[103] Reimann Decl. ¶ 83.

a failed settlement conference, parents' counsel had spent an additional 25.60 hours (22.9 for Nicole Reimann and 2.7 for Lisa Reimann) litigating the claim for attorneys' fees.[104]  The requested lodestar for the fee petition is $19,933.00.

Parents expended time requesting fees that we deducted to account for their partial success or we found were unrelated to the IDEA issues.  Because parents have achieved only partial success in obtaining the attorneys' fees they requested, we agree that a reduction is appropriate.  *See, e.g., Maria C. ex rel. Camacho v. Sch. Dist. of Phila.*, 142 F. App'x 78, 83 (3d Cir. 2005); *E.H. v. Wissahickon Sch. Dist.,* No. CV 19-5445, 2020 WL 6286709, at *12 (E.D. Pa. Oct. 27, 2020) (citing *Institutionalized Juvs.*, 758 F.2d at 914).  But, we do not agree with the District that the fee petition should be reduced by the same percentage as the overall fee award to reflect time spent requesting fees to which they are not entitled.[105]

Parents succeeded in demonstrating that rejecting the ten-day offer was substantially justified and that they are entitled to fees for their success in the expedited due process and preliminary injunction proceedings.  In light of this success, we will not reduce the fee petition lodestar by the same percentage as the overall fee award.  A "court may, in its discretion, reduce the recovery of attorneys' fees for the underlying action and fee petition by dissimilar percentages."  *S.M. ex rel. G.M. v. Sch. Dist. of Upper Dublin*, No. CIV.A. 10-4038, 2012 WL 2953727, at *6 (E.D. Pa. July 20, 2012) (citing *Durrett v. Cohen*, 790 F.2d 360, 363 (3d Cir.1986)).  Therefore, we reduce the fee petition lodestar by 20%.

---

[104] Suppl. Decl. of Nicole Reimann ¶ 3, ECF No. 39-1 (citing Suppl. Invoices from Batchis Nestle & Reimann LLC, attached thereto as Ex. 1, ECF No. 39-2).

[105] District's Opp'n 17.

**Conclusion**

We deduct $110,089.50 from parents' merits lodestar of $241,648.00, for a total merits fee award of $131,558.50.  *See* Appendix A for the calculation of the merits fee award.  We deduct $3,986.60 from the fee petition lodestar of $19,933.00, for a total fee petition fee award of $15,946.40.  *See* Appendix B for the calculation of the fee petition fee award. Parents are entitled to $402.00 for recoverable costs.  Therefore, we conclude that parents are entitled to a total fee award of $147,504.90 and $402.00 in costs.

**Appendix A: Merits Fee Award**

| Deduction | Amount of Deduction |
|---|---|
| Fees by "GD" and "CS" | $4,809.50 |
| Fees for J.S.'s suspension hearing | $850.00 |
| Fees for the Third Due Process Complaint | $5,831.00 |
| Partial Success Deduction | $98,599.00 |
| **Total Deduction:** | **$110,089.50** |

| | |
|---|---|
| **Total Merits Lodestar:** | **$241,648.00** |
| **Total Deduction:** | **$110,089.50** |
| **Total Merits Fee Award:** | **$131,558.50** |

**Appendix B: Fee Petition Fee Award**

| Deduction | Amount of Deduction |
|---|---|
| Partial Success Deduction | $3,986.60 |
| **Total Deduction:** | **$3,986.60** |

| | |
|---|---|
| **Total Fee Petition Lodestar:** | **$19,933.00** |
| **Total Deduction:** | **$3,986.60** |
| **Total Fee Petition Fee Award:** | **$15,946.40** |